**Elzie CREWS, Appellant,**

v.

**Frank H. COOLEY, Appellee.**

No. 10527.

Court of Civil Appeals of Texas.

Austin.

Dec. 4, 1957.

Merchant & Fitzjarrald, Amarillo, for appellant.

Snodgrass & Calhoun, V. G. Kolius, Amarillo, for appellee.

ARCHER, Chief Justice.

This is a suit brought by appellee, a licensed real estate dealer, against appellant seeking to recover $1,500 as a commission for securing a purchaser for a beauty parlor. Both parties moved for a summary judgment. Appellant's motion was denied, appellee's motion granted, and judgment in favor of appellee and against appellant entered for $1,500.

The appeal is on one point assigned as error and is as follows:

"The Trial Court erred in granting a summary judgment for appellee and in failing to grant a summary judgment for appellant because the uncontroverted facts show that appellee had full knowledge of the defect in appellant's title at the time the written agreements were entered into."

Appellee in four counterpoints contends that there was no error in granting appellee's motion for summary judgment because the affirmative defense was not pleaded in the Trial Court but was raised in the Court of Civil Appeals, and that any evidence offered by appellant in support of

the affirmative defense not pleaded would be inadmissible, and that the defense of knowledge by appellee of the defect in appellant's title is not raised by the evidence, and appellant's own testimony estops her from denying her title was defective.

It appears that on March 13, 1956, appellant entered into a written sales contract with Mozelle Prince to sell certain equipment and fixtures in a beauty shop for $11,500, and to lease a building to Prince for five years. In a special agreement appellant agreed to pay appellee $1,500 for services in acting as an agent in consummating the sale.

On March 8, 1955, Herman Vaughn filed a lis pendens notice in the County Clerk's office in which he claimed title to the real estate which appellant had contracted to lease to Prince.

An attorney representing Prince refused to approve the closing of the transaction because of the lis pendens.

In his petition appellee alleged the execution of the contract to sell the property for appellant for $10,000 and to pay appellee $1,500 as a commission; that he procured Mozelle Prince as a purchaser for the property for the total sum of $11,500 and that the purchaser was ready, able and willing to purchase the property; that a contract of sale was entered into between appellant and Prince but appellee failed to produce a good and merchantable title and as a result Prince refused to consummate the purchase and appellant refused to pay appellee his commission.

Appellee answered by general denial, set out the contracts, and pleaded that she has at all times been ready, able and willing to comply with the contracts and alleged that the claim of third party (Vaughn) was not well founded and that she stood ready to execute the lease contract and the Bill of Sale, and that until the contract is consummated she is not indebted to appellee.

On January 19, 1957, appellee filed his motion for summary judgment, setting out the substance of his original petition, with a copy of the agreements, and the lis pendens notice, with a supporting affidavit made by appellee that there is no genuine issue as to any material fact.

Appellant filed an answer to appellee's motion for summary judgment and alleged that there were sharply disputed issues of fact involved in the cause of action, and referred to the oral depositions on file. Appellant further alleged that plaintiff was fully advised as to all facts and circumstances in connection with the property and was aware of the lis pendens notice, the suit pending and of the claims made therein, and further answered that the purchase price was never tendered to her and that she was ready to complete the sale and made a motion for summary judgment, because the sale had not been consummated; that appellant was not entitled to recover and attached supporting affidavits and made the contracts and depositions a part of the motion.

Upon a hearing on the motions the Court concluded that there was an absence of genuine issue of material fact, and that the law was with appellee and against appellant and gave appellee a judgment for $1,500.

We believe that there were fact questions of a material nature to be resolved in a trial on such issues, raised by the pleadings and evidence in support thereof in the oral depositions of both appellant and appellee, as to nature and knowledge by appellee of the claimed title defect, and as to an opportunity by appellant to remove such defects, if any [which she subsequently did], Vaughn v. Crews, Tex. Civ.App., 294 S.W.2d 429, and that the Court was in error in granting a summary judgment.

In an oral deposition taken prior to the filing and hearing on the motions for summary judgment, appellee Cooley testified:

"Q. (By attorney for appellant) All right, then when did Mrs. Crews ever refuse to execute a bill of sale when you offered her $10,000? When did she refuse? That is what I want to know. You said in your pleadings that she refused. I want to know when? A. That she refused what?

"Q. Refused to execute a bill of sale to the beauty parlor at a time when you had a purchaser offering her $10,000 in cash? A. Well, I think that the only thing that Mrs. Crews had refused to do was to make clear merchantable title, which we gave her an opportunity to do.

"Q. When did she refuse to do that? A. At several occasions when I approached her.

"Q. Name one of them? A. Well, during the time that this transaction was taking place a former husband of Mrs. Crews, Mr. Vaughn, Henry Vaughn, had called us and told us that twice before this property had been brought up to the same point of sale that it was brought up to at this time, and evidently Mrs. Crews knew at that time that she was not able to deliver a clear merchantable title, which was certainly news to me when we found that out.

"* * * * * *

"Q. You knew there was a mortgage on the personal property, the beauty shop equipment, when you had the property for sale, you knew that? A. I did not know that there was anything against any of the property.

"Q. You didn't know it at all? A. Not when it was listed.

"Q. When did Mr. Vaughn call you, before you made the deal with Mrs. Prince or afterwards? A. I don't recall.

"Q. As a matter of fact, he called you before you made the deal, and you know it? A. Well, if I knew it I would say so, Mr. Fitzgerrald.

"Q. Are you saying that that isn't true? A. No, I am not saying that it isn't true, but I really don't know.

"Q. Did Mrs. Crews ever tell you that she owned the building clear of debt? A. No, I don't think she ever did.

"Q. Did you ever ask her? A. No.

"Q. Did you ask her if the beauty parlor equipment was free of debt? A. No, sir.

"Q. And she didn't tell you? A. No, sir.

"Q. Is that your testimony? A. Yes, sir.

"Q. All right, now then, what you actually said to Mrs. Crews was to get this title cleared up so the sale could go through, that is true, isn't it. A. Yes, sir.

"* * * * * *

"Q. You didn't inform yourself? A. Of what?

"Q. Of the condition of the law suit involving the title to the real estate? A. That is correct, I did not.

"* * * * * *

"Q. All right, sir. Now then, you knew that the debts against the place had to be paid out of the proceeds of this sale, she told you that, didn't she? A. Correct.

"* * * * * *

"Q. But did you give an unqualified offer to pay $10,000 and take possession? A. No, sir."

Appellant in an oral deposition, taken prior to the filing of the motions for summary judgment, testified:

"Q. And you owed who for that equipment? A. Southwest Beauty

Supply. In fact, I am still paying on it.

"Q. And did this contract provide that that was to be paid off? ᴀA. Yes. Now, when Mr. Cooley and I,—he said he had this buyer, we made a definite appointment to meet on Sunday afternoon in my beauty shop to show her the beauty shop, and Mr. Cooley and Mrs. Prince came over there and we went through the shop and looked it over and she liked it, and we discussed it, and I told them at the time—

"Q. Now, you told who? A. Mr. Cooley and Mrs. Prince, that I owed a note at the bank, and that also Jefferson Standard had the beauty shop tied in with their mortgage on that building out there, but they promised to release it for a certain fee.

"Q. Who promised that? A. Jefferson Standard.

" * * * * * *

"Q. Now, then, when did you first learn that there was going to be some difficulty in the closing of this transaction? A. Well, Mr. Cooley called me and said Mr. Vaughn was over at his office and told him that I couldn't sell. And I said, well, he just doesn't have anything at all to do with this.

" * * * * * *

"Q. What you are saying is, Elzie, that you could have at all times passed title to that property? A. Well, if they would have accepted the lease, and Mozelle had put up the $10,000 at the beginning of the lease, I could have given her the lease and could have paid off everything that was due on it, and it would have been secure at any time.

"Q. Do you know whether or not you could have passed good title? A. Sure, I could pass good title. I don't owe anything on it other than—the taxes are up on it, and the payments have been kept up and everything. I

don't know how anything could come up on the title."

Rule 166–A, Texas Rules of Civil Procedure; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Womack v. Allstate Insurance Co., Tex., 296 S.W.2d 233.

■ In a summary judgment proceeding, credence will be given to testimony most favorable to the party against whom the judgment is sought and evidence to the contrary will be disregarded, and the presumption is in favor of the person against whom the judgment is sought until such presumption is overcome by proof.

Frazier v. Glen Falls Indemnity Co., Tex.Civ.App., 278 S.W.2d 388, er. ref., N.R.E.

In view of another trial we direct the Court's and counsel's attention to the provisions of Section 28 of Article 6573a, Vernon's Ann.Civ.St.

The judgment of the Trial Court is reversed and the cause is remanded.

Reversed and remanded.